IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LISA A. HAMILTON )
)
v. ) Case No. 3:22-0464
)
KILOLO KIJAKAZI )
    Commissioner of Social Security )

To:    **The Honorable Waverly D. Crenshaw, Jr., Chief District Judge**

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 16), to which Defendant has filed a response. (Docket No. 21.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 22.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 5.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket No. 16) be GRANTED, the Commissioner's decision be REVERSED, and that this matter be REMANDED for further proceedings.

## I.    INTRODUCTION

On April 15, 2016, Plaintiff filed an application for disability benefits in which she asserted that, as of the alleged onset date of August 15, 2014, she was unable to work due to degenerative disc disease in the lumbar spine, obesity, hypertension, migraine headaches, vision problems, and

problems with her knees, ankles, and feet. (Transcript of the Administrative Record (Docket No. 13) at 65, 67.)[1] Plaintiff's application was denied initially and upon reconsideration and, on March 13, 2018, following an administrative hearing, administrative law judge ("ALJ") H. Scott Williams denied Plaintiff's claim after concluding that Plaintiff's residual functional capacity ("RFC") allowed her to perform a range of light work in jobs that were available in significant numbers in the national economy. (AR 65–75.)

On November 5, 2018, Plaintiff filed a new application for DIB in which she alleged that, as of a new alleged onset date of March 14, 2019,[2] she was unable to work due to headaches, degenerative disc disease, facet arthritis, hypertension, stenosis, sciatica, and a bulging disc at L5-S1. (AR 109, 111.) The application was denied initially and upon reconsideration. (AR 111, 127.) On May 28, 2021, Plaintiff appeared with counsel and testified at a second hearing conducted by ALJ Michael Finnie. (AR 32.) On June 21, 2021, the ALJ denied the claim. (AR 12–14.) On May 17, 2022, the Appeals Council denied her request for review of the ALJ's decision (AR 1–4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this civil action, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.    THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act December 31, 2019.

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

[2] Plaintiff originally alleged an onset date of March 9, 2019. However, during her hearing on May 28, 2021, Plaintiff requested that the onset date be amended to March 14, 2019, which the ALJ accepted. (AR 15.)

2

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 9, 2018 through her date last insured of December 31, 2019 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, hypertension, chronic kidney disease (CKD) and a history of migraine headaches (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) in that the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk 6 hours of an 8-hour workday with normal breaks, sit for 6 hours of an 8-hour workday with normal breaks, occasionally climb ramps and stairs, stoop, kneel, crouch; frequent reaching in all directions with the bilateral upper extremities; frequent handling, fingering and feeling with bilateral upper extremities; limited to frequent use of bilateral extremities to push and/or pull hand controls; avoid exposure to extreme cold, heat, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, hazardous moving machinery and unprotected heights and no commercial driving or other driving.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant, born on July 22, 1965 was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a))

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 9, 2018, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(AR 18-26.)

## III.    REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV.    DISCUSSION AND CONCLUSIONS OF LAW

### A.    Standard of Review

The determination of disability under the Social Security Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if the "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

4

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

## B.     The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform a range of light work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 18–26.)

## C.    Plaintiff's Assertions of Error

Plaintiff alleges that the ALJ committed two reversible errors: (1) that he improperly formulated the RFC by failing to adequately weigh and consider the opinion evidence; and (2) that he improperly discounted Plaintiff's credibility. (Docket No. 17 at 11, 16.) Based on these alleged errors, Plaintiff requests that the Commissioner's decision be reversed and remanded for either a grant of benefits or additional consideration pursuant to sentence four of 42 U.S.C. § 405(g), which states:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

(*Id*. at 18-19.) If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

6

1.     **The RFC Formulation.**

With respect to Plaintiff's RFC, Plaintiff asserts that the ALJ erred because he (i) "improperly applied the *Drummond* rule" and (ii) failed to adequately and properly consider the opinion evidence. (Docket No. 17 at 11.) For the reasons explained below, this Court finds that the ALJ did not err in his application of *Drummond* but did err when considering the opinion evidence.

i.     **The ALJ's application of the *Drummond* rule.**

The "*Drummond* rule" refers to a Sixth Circuit decision from 1997 that generally required an ALJ presiding over a claimant's second application for disability benefits to defer to the RFC formulated by the ALJ who handled the initial application. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."). Following this decision, the Commissioner opted to codify the *Drummond* decision by implementing Acquiescence Ruling 98-4(6), which mandated the following:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29771 (Jun. 1, 1998). This ruling represented the prevailing interpretation of *Drummond* in this circuit for many years. *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 362 (6th Cir. 2004) ("In *Drummond,* this court held that, absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."); *see also Ford v. Berryhill*, No. 5:16-CV-00115-LLK, 2017 WL 2531588, at *1 (W.D. Ky. June 9, 2017) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) establish that an ALJ

is bound by the prior ALJ's RFC finding unless there is new and material evidence of a change (improvement) in the claimant's medical condition or a relevant change in the law.").

However, this prevailing approach shifted in 2018 following the Sixth Circuit's decision in *Earley v. Comm'r of Soc. Sec.*, which sought to loosen *Drummond*'s rigid grip on successive disability applications:

> Unusual facts, it seems to us, led to some overstatement in *Drummond* but not to an incorrect outcome. *Drummond* correctly held that substantial evidence did not support the ALJ's decision. And *Drummond* correctly held that res judicata may apply to administrative proceedings. … If an individual, say, files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application. And res judicata would apply in both directions: to bar the government and individuals from relitigating a past final decision for no reason other than to take a second bite at the same apple.

893 F.3d 929, 933 (6th Cir. 2018) (internal citations omitted). The Sixth Circuit also made clear that any application submitted by the same claimant for a new alleged period of disability would warrant "fresh review" of the administrative record to determine whether the claimant's condition had worsened or otherwise justified a change in the analysis from the previous administrative opinion. *Id*. at 934. The Sixth Circuit cautioned, however, that a claimant filing a second application "should not have high expectations about success if the second filing mimics the first one." *Id*. at 933.

The Court begins its analysis by noting the ALJ's application of *Drummond* in the instant case:

> The record reveals that the claimant has filed [a] prior application, which resulted in a determination by another Administrative Law Judge dated March 13, 2018 (Ex. B1A). In addition, the Appeals Council reviewed and agreed with the decision (Ex. B2A). Therefore, the undersigned must apply the principles set forth in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) (see also Social Security Ruling 98-4(6)) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990) (*See* Social Security Acquiescence Ruling 98-3 (6)). This precedence holds that, absent evidence of improvement or deterioration in a

8

claimant's condition, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge. The undersigned has complied with *Drummond* and the other cited precedence and finds that the claimant's condition has not deteriorated based upon substantial medical evidence submitted; therefore, the residual functional capacity assessed herein has not been further reduced from that assessed in the prior Administrative Law Judge decision.

(AR 15.) From this, it appears that the ALJ relied on the broad interpretation of *Drummond* that the Sixth Circuit renounced in *Earley*, believing that he was "bound" by the initial RFC. *Id.* at 932 ("That is not how it works. An individual may file a second application – for a new period of time – for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold."). The time period covered by Plaintiff's second disability claim (March 14, 2018, to December 31, 2019)[3] is different than the time period covered by her first disability claim (August 15, 2014, to March 13, 2018). Accordingly, res judicata does not apply and the ALJ was not bound by the earlier decision. *See Ratliff v. Saul*, No. 7:18-CV-114-HRW, 2020 WL 855958, at *3 (E.D. Ky. Feb. 20, 2020).

The ALJ's failure to explicitly apply *Earley* would only constitute reversible error if the ALJ failed to provide a "fresh look" and independently review Plaintiff's most recent application covering the period of March 14, 2018, to December 31, 2019. *See Earley*, 893 F.3d at 931; *Burrage v. Saul*, No. 2:18-cv-00079, 2019 WL 3780095, at * 5 (M.D. Tenn. Aug. 12, 2019); *Lambert v. Comm'r of Soc. Sec.*, No. 1:18-CV-116, 2019 WL 336903 (S.D. Ohio Jan. 28, 2019) ("Because [the ALJ] gave a 'fresh look' to the new evidence, a remand under *Earley* is not

---

[3] This period was calculated based off Plaintiff's date last insured ("DLI") – the final date on which a claimant retains insured status for purposes of a DIB claim – which is December 31, 2019. (AR 18.) A claimant seeking disability benefits must present evidence that she became disabled prior to the DLI; thus, given the new alleged onset date of March 14, 2018, Plaintiff must demonstrate that her disability arose between March 14, 2018, and December 31, 2019, to qualify for DIB. *See Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015) ("Claimant bears the burden of establishing that a disability began before [her] disability insurance expired[.]").

warranted."). Plaintiff concedes that the ALJ did "appear to go on to review the opinion evidence in the file," but states that the ALJ "determined the same [RFC] as the prior ALJ." (Docket No. 17 at 12.) Plaintiff implies – though does not clearly allege – that this purportedly parallel RFC determination is *de facto* evidence that the ALJ violated *Earley*.

Plaintiff also argues that the ALJ's assignment of a nearly identical RFC to the one formulated in 2018 represents reversible error. (Docket No. 22 at 2 ("[W]hat the ALJ actually did was tweak a few minor and inconsequential postural and environmental limitations.").) However, the Court sees nothing in *Earley* that prohibits the adoption of the same or nearly same functional limitations set forth in a prior RFC so long as the ALJ undertakes an independent analysis of the evidence presented in the subsequent application. *See Brent v. Comm'r of Soc. Sec.*, No. 17-12654, 2018 WL 4403418, at *3 (E.D. Mich. Sept. 17, 2018) (finding consistency with the *Earley* holding where "[t]he record establishes that ALJ Matulewicz conducted an independent review of the evidence"). Indeed, the Sixth Circuit made clear that reversible error occurs only where an ALJ fails to meaningfully examine the administrative record at issue in determining that a claimant is not disabled. *See Earley*, 893 F.3d at 932 ("Instead of asking whether the evidence supported Earley's new application, [the ALJ] thought he was precluded by the first ruling.").

A review of the operative administrative opinion demonstrates that the ALJ did not thoughtlessly endorse the prior ALJ's decision. Instead, the ALJ here concluded a thorough review of the evidence in question, even when the evidence had been discussed in the prior decision. For example, the ALJ supplied a thorough assessment of Plaintiff's back condition since January 2015. (AR 22 (citing AR 548 ("B3F")).) When considering Plaintiff's history of back pain, the ALJ discussed medical records that were included in the prior decision and new treatment notes, including Plaintiff's use of ibuprofen to treat her pain. (AR 22.) The ALJ detailed Plaintiff's visits

to the Wilson County Health Department in 2019 and 2020, where she "reported only taking ibuprofen as needed for lower back pain" and where she was observed to be able to get up from the chair to the exam table and to change posture from lying to sitting "without too much difficulty." (AR 22 (citing AR 716 ("B15F")) (citing AR 797 ("B19F")).) This analysis led to the ALJ's determination that Plaintiff had the RFC to perform less than a full range of work. (AR 20.)

In addition, the ALJ thoroughly assessed Plaintiff's chronic kidney disease, hypertension, and headaches. (AR 23.) He assessed treatments notes from September 2017, June 2018, April 2019, and October 2020 and highlighted normal findings from recent kidney function labs; Plaintiff's use of medication to control her hypertension; and a general lack of extensive treatment by any providers for headaches. (*Id.*) The information in these medical records led the ALJ to determine that Plaintiff retained the ability to perform work within certain parameters.

As detailed above, the ALJ undertook a "fresh" but not "blind" review of the evidence. *Earley*, 893 F.3d at 934. Although Plaintiff may differ with the ALJ on his evaluation of her RFC, this Court's role is not to inquire "if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). *See also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support the opposite conclusion").

In short, although the ALJ erred when he stated that he was bound by the earlier decision, this statement alone is not enough to warrant remand because the ALJ complied with *Earley* and provided a "fresh review" of the evidence. For these reasons, this Court rejects Plaintiff's assertion of error with respect to the ALJ's application of *Drummond* and *Earley*.

11

### ii. The ALJ's consideration of the opinion evidence.

Next, Plaintiff argues that the ALJ improperly considered the "opinion evidence" because his assessment of those opinions "falls short of the current regulatory standard for assessing opinion evidence." (Docket No. 17 at 12.) Plaintiff alleges that the ALJ failed to "discuss any of the medical opinion evidence in terms of supportability and consistency" as required under the regulations. (*Id.* at 14–15 (citing 20 C.F.R. § 404.1520c(b)(2); *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020)).)

When evaluating medical opinions, the presiding ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).[4]

Supportability and consistency are the "most important factors" in this analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with

---

[4] This regulation changed the articulation required by ALJs when considering medical opinions. The prior regulations were interpreted to set forth a general hierarchy of medical source opinions. 20 C.F.R. § 404.1527. Although the new regulations have eliminated this hierarchy, an ALJ must still "articulate how [they] considered the medical opinions and how persuasive [they] find all of the medical opinions." *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)) (cleaned up).

evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two most important factors – supportability and consistency – must be explained, while the other factors may be explained. *Id.* § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies*, 2020 WL 2841379 at *14 (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was support by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

Here, the ALJ specifically considered and determined the persuasiveness of four medical opinions: (1) state agency consultant Dr. Ok Yung Chung, M.D.'s May 3, 2019 opinion; (2) state agency consultant Dr. Kanika Chaudhuri, M.D.'s August 15, 2019 opinion; (3) consultative examiner Dr. Roy Johnson, M.D.'s April 22, 2019 opinion; and (4) provider Dr. Roger McKinney, M.D.'s December 4, 2016 opinion. (AR 24.) The ALJ found the opinions of Dr. Chung and Dr.

Chaudhuri, the state agency consultants, to be persuasive, but found the opinions of Dr. Johnson, the consultative examiner, and Dr. McKinney, Plaintiff's provider, to *not* be persuasive.

In their opinions, state agency consultants Dr. Chung and Dr. Chaudhuri concluded that Plaintiff could perform a range of light work. (AR 102–06, 120–23.) Dr. Chung found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours each in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently reach, handle, finger, and feel. (AR 103–04.) Dr. Chaudhuri affirmed these limitations. (AR 120–23.) The ALJ found these two opinions to be persuasive because Plaintiff "does have multiple impairments but there is no extreme loss of function. She has pain but has been noncompliant with applying for financial assistance, which would help to obtain specialized care. In addition, it appears that she responds to medication." (AR 24.) Plaintiff argues that the ALJ failed to point to specific evidence in the record to explain why he found these opinions to be persuasive. As for the financial assistance issues, Plaintiff argues that the ALJ's finding of noncompliance comes from one document in the record from 2015 (three year prior to the alleged onset date) and that his finding is contradicted by other evidence in the record. (Docket No. 17 at 13.)

As for the next opinion, consultative examiner Dr. Johnson concluded in his April 2019 opinion that Plaintiff could occasionally lift and/or carry 15 pounds because of tenderness in her low back and a decreased range of motion; had no sitting restrictions; and could stand or walk for at least three hours during an eight-hour workday with normal breaks. (AR 731.) The ALJ did not find this opinion to be persuasive because Plaintiff's "lumbar spine range of motion was decreased by 10 degrees" and because Plaintiff "has normal gait and station, with no mention of atrophy." (AR 24.) Plaintiff argues that the ALJ did not discuss or point to any evidence to show "how any

of these things might undermine the persuasiveness of the examiner's opinion." (Docket No. 17 at 13.) She also argues that the ALJ failed to address any of Dr. Johnson's positive findings, but rather "simply appears to disagree" with Dr. Johnson about the impact of the deficit in range of motion, which Plaintiff argues is an impermissible substitution of judgment. (*Id.* at 13–14 (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963)).)

Finally, provider Dr. McKinney concluded in his December 2016 opinion that Plaintiff could lift and/or carry up to 20 pounds occasionally; sit for six hours in an eight-hour workday; stand and/or walk for two hours each in an eight-hour workday; ambulate for 100 yards; frequently use both hands; occasionally climb stairs and ramps; and occasionally balance. (AR 566–71.) The ALJ found this opinion to be unpersuasive because it did not "establish the relationship" between Plaintiff and Dr. McKinney; because, despite citing knee issues, there is no imaging in the file to "substantiate a diagnosis" related to Plaintiff's knees; and because Plaintiff has a "normal gait and station" and "normal muscle strength." (AR 24.) The ALJ cited to Dr. Johnson's April 2019 opinion to support the ALJ's findings regarding gait, station, and muscle strength, despite finding that opinion to not be persuasive, but provided no further explanation or citation to the record. (*See* AR 24.) Plaintiff takes issue with the ALJ's discussion of her relationship with Dr. McKinney. (Docket No. 17 at 14.) She argues that the ALJ's finding is taken from the prior ALJ decision, which is based on the outdated "treating physician rule" and is, therefore, irrelevant to her current RFC, which is for a different period of time. (*Id.*) She also argues that the decision contradicts Plaintiff's testimony. (*Id.*)

Here, the ALJ's three sentence analyses of the opinions of Dr. Chung, Dr. Chaudhuri, Dr. Johnson, and Dr. McKinney do not satisfy the SSA's standard. (AR 24.) At no point does the ALJ explicitly articulate the supportability or consistency of any of these opinions to support his

determination that they are either persuasive or not. Nor does the ALJ implicitly articulate these factors in any way that would allow this Court to determine if his decision was supported by substantial evidence.

First, with respect to the state agency consultants' opinions, the ALJ provides no citation to the record to support his assertion that Plaintiff has "no extreme loss of function," which he puts forth to support his finding that the opinions are persuasive. (AR 24.) Nor does he articulate how Plaintiff's "noncomplian[ce] with applying for financial assistance" leads to a finding that Dr. Chung and Dr. Chaudhuri's opinions are supportable and/or consistent.[5] (AR 24.) Further, he fails to articulate whether or how he considered examination findings or evidence in the record that might contradict the opinions of Dr. Chung and Dr. Chaudhuri. (AR 24.) The ALJ does state that Dr. Chaudhuri "agreed" with Dr. Chung's assessment of Plaintiff's limitations, but he did not clearly articulate how that agreement made either doctor's assessment more persuasive. (AR 24.)

In addition, the ALJ did not discuss the supportability or consistency of Dr. Johnson's 2019 opinion. (AR 24.) The ALJ referenced some findings from the consultation report throughout his decision. For example, he referenced that Plaintiff's grip strength was rated five out of five; Plaintiff had "slight defects in lumbar flexion at 80 degrees instead of 90 degrees"; and Plaintiff reported a history of headaches. (AR 22–23 (citing AR 729–32 ("B16F").) However, when determining that this report was not persuasive, the ALJ failed to articulate which findings of a "normal gait and station" he considered to be inconsistent with Dr. Johnson's assessment of Plaintiff's limitations.[6] (AR 24.) The ALJ also did not articulate whether or how he considered

_____

[5] In his decision, the ALJ provides some detail about Plaintiff's financial hardship, but he fails to link this alleged failure to obtain financial assistance with the persuasiveness of the state agency consultants' opinions. (AR 22, 24.)

[6] In his decision, the ALJ referenced findings of a "normal gait" from February 6, 2015, August 10, 2016, and September 29, 2017, all of which are dates outside of the time period covered

16

examination findings that might support Dr. Johnson's assessment, including Dr. Johnson's earlier opinion from 2016.[7] Instead, the ALJ referenced a decrease in lumbar spine range of motion and states that there were "no substantial deficits in motion." It is not clear if the ALJ is referencing Dr. Johnson's 2019 opinion or another piece of evidence in the record. In its response, Defendant provides an analysis of the persuasiveness of Dr. Johnson's 2019 opinion. (Docket No. 21 at 11–12.) For example, Defendant asserts that "the state agency medical consultants considered Dr. Johnson's consultative examination and found it not persuasive because it was internally inconsistent and not well supported by the objective findings." (*Id.* at 12 (citing AR 105, 122–24).) While this may be true, the ALJ did not provide this explanation when deciding that Dr. Johnson's opinion was not persuasive; accordingly, this explanation has no impact on the Court's analysis. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

Finally, the ALJ failed to articulate why or how Dr. McKinney's 2016 opinion was not supportable or consistent. Aside from the short paragraph determining the opinion was not persuasive, the ALJ did not reference or discuss Dr. McKinney's 2016 opinion. (AR 24 (citing AR 565–72 ("B7F")).) Rather, the ALJ focused on the opinion's failure to "establish the relationship"

---

by Plaintiff's second disability claim (March 14, 2018, to December 31, 2019). (AR 22 (citing AR 544 ("B3F"), AR 554 ("B4F"), AR 603 ("B11F"), AR 693 ("B14F")).)

[7] Plaintiff argues that a consideration of Dr. Johnson's 2016 opinion would bolster a finding of supportability and consistency for Dr. Johnson's 2019 opinion and Dr. McKinney's 2016 opinion. (Docket No. 17 at 14.) The ALJ did, in fact, reference evidence from Dr. Johnson's 2016 opinion numerous times (*see* AR 22–23 (citing AR 554–56 ("B4F"))), but he did not articulate how Dr. Johnson's 2016 opinion impacted the supportability or credibility of Dr. Johnson's 2019 opinion. (*See* AR 24.)

between Dr. McKinney and Plaintiff, but he did not explain how or why such a relationship matters. (AR 24.) Further, the record is replete with references to Plaintiff's prior visits with Dr. McKinney, to which the ALJ cites at other points in his decision. (*See, e.g.*, AR 18–23 (citing AR 600–03 ("B11F"), AR 604–74 ("B12F"), AR 691–702 ("B14F")).) The ALJ provides no link between his finding of non-persuasion and his reference to Plaintiff's gait, station, or muscle strength. Although the ALJ most clearly discusses consistency when he states that Dr. McKinney "cites knee problems but there is no imaging in the file to substantiate a diagnosis for her knees" (AR 24), this one brief mention of consistency is not enough to allow this Court to determine if Plaintiff's disability determination was supported by substantial evidence. *See Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021).

Accordingly, the ALJ did not "build an accurate and logical bridge" to show how the evidence in Dr. Johnson's 2019 opinion and in Dr. McKinney's 2016 opinion led to the ALJ's conclusion that these opinions were not persuasive such that those doctor's suggested limitations should not be considered in a determination of Plaintiff's RFC. *See Tucker v. Comm'r of Soc. Sec.*, 2023 WL 309392 at *7 (M.D. Tenn. Jan. 18, 2023) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio Mar. 1, 2011)). With respect to the four medical opinions, the ALJ provided no explicit discussion of their supportability or credibility to support his finding that they were or were not persuasive. (*See* AR 24.)

Although the ALJ is "not required to address every piece of evidence," the ALJ must nevertheless "provide a 'logical bridge' between the evidence and his conclusions." *Collier v. Comm'r of Soc. Sec. Admin.*, No. 3:16–cv–02077, 2018 WL 2193965 at * 2 (M.D. Tenn. May 14, 2018) (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). In this instance, the ALJ failed to provide such a "logical bridge." *Id.* He did not meet the minimum levels of articulation set forth

in the applicable regulations, which, in turn, frustrates this Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *Hardy*, 554 F. Supp. 3d at 906. Because the ALJ has not sufficiently articulated his reasoning, the Court cannot evaluate his decision with the level of process guaranteed to claimants by the SSA. *Hardy*, 554 F. Supp. 3d at 908. Accordingly, remand is required.

### 2. The ALJ's Consideration of Plaintiff's Credibility.

Plaintiff next challenges the ALJ's consideration of statements that she made about her limitations. (Docket No. 17 at 16.) She asserts that the ALJ failed to consider how her limitations could support, rather than dispute, the medical opinions in the record. (*Id.*) When an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process.[8] SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ considers whether there is an underlying medical determinable impairment that could reasonably be expected to produce an individual's symptoms. *Id.* at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the

---

[8] A "symptom" is defined as an individual's own description or statement of her impairment. SSR 16-3p, 2017 WL 5180304, at *2.

claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at \*7–8.

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important.[9] If an individual's statements are *consistent* with the objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at \*8. On the other hand, if those statements are *inconsistent*, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at \*8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at \*9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at \*10. However, the

---

[9] The precursor to SSR 16-3p, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements regarding the limiting effects of his alleged symptoms. 1996 WL 374186 at \*3 (July 2, 1996). Although the Commissioner removed any reference to "credibility" in SSR 16-3p, there is no substantive change in the ALJ's analysis, and the case law pertaining to credibility evaluations under SSR 96-7p remains applicable. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *see also Young v. Berryhill*, No. 3:17-cv-395, 2018 WL 1914732, at \*6 (W.D. Ky. April 23, 2018) ("The analysis under SSR 16-3p otherwise is identical to that performed under SSRI 96-7p."). As noted by a sister district court, reviewing courts have therefore largely "decline[d] to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at \*14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

20

Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").

In the decision at issue, the ALJ found that Plaintiff's allegations concerning her impairments and her ability to work were not "sufficiently supported" by the record. (AR 21.) He found that her impairments could be expected to produce some, but not all, of her alleged symptoms. (*Id.*) The ALJ stated that he made his decision "in light of the medical findings, the medical history and degree of medical treatment required, and the claimant's description of her activities of daily living." (*Id.*) In his report, he discussed Plaintiff's testimony during the May 28, 2021 hearing, including her statements related to the intensity and persistence of her pain; her ability to walk, sit, bend, etc.; her headaches and sweat outbreaks; her medication usage; her health insurance and ability to obtain medical treatment; and her daily activities. (*Id.*) He then analyzed Plaintiff's statements in comparison to the medical evidence in the record to determine (1) the extent to which Plaintiff's symptoms limited her ability to perform work-related activities and (2) the consistency of Plaintiff's statement about the intensity, persistence, and limiting effects of her symptoms.

The Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints. The record evidence, as noted by the ALJ, is not entirely consistent with Plaintiff's allegations of disabling conditions. For example, the ALJ referenced Plaintiff's

testimony that she has difficulty using her arms and hands and cannot, for example, open jars at home, and contrasted this statement with medical evidence of Plaintiff's grip strength, which was assessed as a "5/5." (AR 21–22.) He also contrasted her use of ibuprofen to treat her back pain with medical advice to avoid NSAIDs in conjunction with an increased glomerular filtration rate. (AR 22.) In addition, he pointed to medical evidence that she could "get up from the chair to the exam table . . . change posture from lying to sitting . . . and change posture from lying to sitting" without significant difficulty, which contrasted her testimony that she is "unable [to] work because of back pain . . . unable to walk for long periods, as she has hip and leg pain . . . unable to bend forward due to back pain that radiates into her hips and legs" and more. (AR 21.) Plaintiff complains that the ALJ "cherry-pick[ed]" examples from the record to support certain findings, including that she had relief from pain thanks to medication, could tend to her personal needs, and could cook for herself, among others. (Docket No. 17 at 16–17.) However, the ALJ provided a thorough summary of Plaintiff's subjective statements regarding her pain, her daily activities, her medication usage, and the frequency at which she sought treatment. (AR 21.)

Plaintiff also complains that the ALJ improperly considered her failure to seek treatment when he determined that the record did not substantiate her allegations concerning her impairments. (Docket No. 17 at 18.) She argues that he focused on one medical record – a physical therapy note indicating that she failed to apply for financial assistance prior to the alleged onset date – and did not discuss Plaintiff's explanation about why she could not afford medical treatment. (*Id.* (citing AR 45).) During the hearing and in response to her attorney's question about whether she currently had health insurance, Plaintiff stated:

> No, ma'am. My husband used to keep us on insurance through his work. He had to quit his job back in 2015, so at the end of that year his insurance stopped. So, I had nothing coming in to buy insurance or nothing. And he couldn't afford it because he's barely paying the bills now without me helping him. I went – you know I had

Dr. McKinney and he's been my doctor all my life. And it's just -- I just can't pay to see him because I don't have the money to pay him. So, my friends told me why don't you just try to go to the health department? Well, I didn't know what the health department would be. I called up there and they told me to come up there. So, I've been going to see -- I've been seeing them since 2018.

(AR 45.) In his decision, the ALJ described her testimony as follows: "She has not had health insurance since 2015. Since 2018, she has been receiving treatment from the Health Department . . . . She did not go to the doctor at this time because of the lack of finances." (AR 21.) Although the ALJ did not explicitly state that Plaintiff's lack of insurance coverage was because of her husband's loss of his job, he did state that she did not have health insurance and did not seek medical treatment because of finances. (*Id.*) The ALJ's description further demonstrates that he considered the possible reasons that Plaintiff may not have complied with treatment.[10] (*Id.*)

In sum, the ALJ relied on specific evidence to support his conclusion that Plaintiff's subjective complaints were not entirely consistent with the record, including objective medical evidence, Plaintiff's testimony regarding her symptoms and daily activities, and her conservative medical treatment. Given such support, as well as the significant deference that must be afforded the ALJ's credibility determination, the Court finds no reversible error in the ALJ's finding. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("[W]e affirm if the

---

[10] In addition, to support her argument that the ALJ improperly discounted her credibility, Plaintiff also complains that the ALJ failed to show that she could perform certain activities on a "sustained basis." (Docket No. 17 at 17.) However, two of the cases to which Plaintiff points in support of this alleged requirement are concerned with the assessment of the functional limitations of mental impairments rather than the evaluation of symptoms related to physical impairments. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The third case that Plaintiff cites merely states that RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Cohen v. Sec'y of Dept. of Health & Human Svcs.*, 964 F.2d 524, 530 (6th Cir. 1992).

ALJ's determination is reasonable and supported by substantial evidence.") (internal citation and quotations omitted). This assertion of error is, therefore, rejected.

## V.    RECOMMENDATION

Based on the foregoing analysis, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (Docket No. 16) be GRANTED, the Commissioner's decision be REVERSED, and this matter be REMANDED to the SSA for further administrative proceedings consistent with this Report and Recommendation.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).


Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge